COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ERIC SAKIL, | § | No. 08-05-00342-CR |
| Appellant, | § | Appeal from the |
| v. | § | 168th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20040D06403) |
| | § | |

**O P I N I O N**

Eric Sakil appeals from his conviction for the offense of assault, enhanced against a member of his family or household. In two issues, Appellant argues the trial court erred by (1) including a definition of voluntary intoxication in its charge to the jury, and (2) by refusing to allow the jury to consider the effect of mental illness in determining whether he possessed the requisite state of mind.

On September 24, 2004, El Paso Police Officers Sandra Zamudio and Jaime Cordero were dispatched to an apartment complex at the corner of Montana and on Maple Streets in El Paso County in response to a domestic disturbance. When they arrived, a resident of the complex directed them to an upstairs apartment where Appellant, his wife, Claudia Sakil ("Claudia"), and their children lived. Officer Cordero and another officer detained Appellant in the apartment, while Officer Zamudio left to locate Claudia. She found her downstairs being treated by EMS and fire department personnel; she had a cut to the left side of her face and blood on her shirt and arm.

Officer Zamudio testified that Claudia told her that she and Appellant started arguing about the paternity of one of the children. At some point, Appellant grabbed some of Claudia's papers and began ripping them up. Claudia also told her that she and Appellant continued to argue until he suddenly left the apartment. As soon as Appellant was outside, Claudia locked the door because Appellant had threatened to kill her. Appellant then began to kick and punch the door in an effort to force it open. Claudia grabbed her two children and attempted to escape through the window. However, because the apartment was on the second floor, she decided to wait until Appellant opened the door and try and escape to find help. Appellant was able to force the door open, breaking the frame and the door-lock in the process. Claudia was struck by some part of the door as a result of Appellant forcing it open.[1] Ultimately, she was able to escape from the apartment and called 911.

Appellant was indicted for assault on a member of his family or household and he pled not guilty. After a trial on the merits, a jury found him guilty of the offense as alleged in the indictment and the trial court assessed punishment at seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely filed his notice of appeal and the trial court certified his right of appeal.

In Issue One, Appellant contends the trial court erred by including a definition of voluntary intoxication in its charge to the jury. Specifically, Appellant argues that because he did not rely on or raise the defense of insanity or temporary insanity, and the State did not prove that

---

[1] Officer Zamudio testified that Claudia told her, on the day of the incident, she was struck by the door when Appellant forced it open. At trial, Claudia alleged that she was not struck as a result of the door being forced open. Rather, she was struck as a result of either her or Appellant stepping on the broken door causing, a "piece of wood come flying on the opposite side of [her] face."

he was intoxicated, submission of the voluntary intoxication instruction to the jury was erroneous.

The first step in analyzing a jury charge issue is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If we find error, then we must analyze the error for harm. *Ngo*, 175 S.W.3d at 743. Where, as here, appellant objected to the jury charge, an error does not warrant reversal unless the record shows "some harm" to appellant. *Id*. Harm required for reversal includes any actual harm, regardless of the degree. *Anderson v. State*, 11 S.W.3d 369, 374 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd). We assess the actual degree of harm in light of the charge as a whole, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171; *Rodriguez v. State*, 90 S.W.3d 340, 360-61 (Tex.App.--El Paso 2001, pet. ref'd).

It is well settled that a trial court must instruct the jury on the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 2007); *Taylor v. State*, 885 S.W.2d 154, 157 (Tex.Crim.App. 1994). It is also true that the trial court must instruct the jury on voluntary intoxication, "when temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication . . . ." *See* TEX.PEN.CODE ANN. § 8.04(c) (Vernon 2003). However, even if a defendant does not rely upon temporary insanity as a defense, the instruction may still be given in appropriate circumstances. *Taylor*, 885 S.W.2d at 157-58. A voluntary intoxication instruction is appropriate when "there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his

actions . . . ." *Id*. at 158.

In the present case, there was testimony of Appellant's history of substance abuse by defense witness Dr. David F. Briones. Dr. Briones testified that Appellant's substance abuse contributed to many of his problems. Dr. Briones stated that Appellant had violated parole three times for curfew infractions and testing positive for drugs or alcohol. Dr. Briones also indicated that although Appellant first denied ever having a problem with drugs and alcohol, he later admitted that he had used "'speed and pills'" when he was eighteen. According to Dr. Briones, Appellant admitted to using marihuana "'to go to sleep'" and to having a prior conviction for driving while intoxicated, as well as two prior public intoxication convictions. Dr. Briones also testified that Appellant's history of drug use included the use of alcohol, marihuana, amphetamines, and heroin.

During cross-examination, Dr. Briones stated that overuse of speed could cause a person to "get accelerated," "cramped up," "wired up," hyperstimulated," "paranoid," "hypervigilant," and lose sleep. Dr. Briones also stated that overuse would cause a person to be "hyperative" and "testy" and that "testy" meant oversensitive, uncooperative, and possibly combative. Dr. Briones did not, however, opine that Appellant was likely under the influence of some intoxicant at the time of the assault.

At the charge conference, Appellant objected to the trial court's *sua sponte* inclusion of the Section 8.04 voluntary intoxication charge on the ground that there was no evidence of intoxication. The trial court overruled the objection on the basis that there was evidence that Appellant was not acting right, that he was restless, having trouble sleeping, and being paranoid and that from those conditions, coupled with the doctor's testimony of the possible effect of

drugs, a jury might reach the conclusion that he was intoxicated.

Our review of the record reflects that the Appellant had been in jail for about a week and was released on the afternoon or evening of September 23, 2004, and he had arrived home soon thereafter. The record also reflects that when the 911 tape was played for the jury, the 911 operator specifically asked Claudia if her husband was "intoxicated or high on drugs" and Claudia said "no." The 911 operator repeated the question and Claudia again denied he was intoxicated.

We find that there was insufficient evidence for any fact finder to reach the conclusion that Appellant's psychotic behavior and resulting assault on his wife was caused by his voluntary intoxication. Such a factual conclusion, so weakly based on pyramided inferences, is simply not supported by the evidence. *See Rodriguez v. State*, 899 S.W.2d 658, 668 (Tex.Crim.App. 1995)(Section 8.04 instruction not appropriate when appellant identified no evidence indicating he used intoxicants *prior to or during* the commission of the offense). Accordingly, we conclude that the trial court erred in including the voluntary intoxication instruction in its charge to the jury.

Because the error in the charge was the subject of a timely objection in the trial court, reversal is required if the error is "calculated to injure the rights of defendant," which means that there must be some harm to the Appellant. *Almanza*, 686 S.W.2d at 171. The State argues that inclusion of the voluntary intoxication instruction was harmless as being superfluous, *citing Zuliani v. State*, 52 S.W.3d 825 (Tex.App.--Austin 2001), *rev'd on other grounds*, 97 S.W.3d 589 (Tex.Crim.App. 2003) and *Olivarez v. State*, 171 S.W.3d 283 (Tex.App.--Dallas 2005, pet. ref'd)(mem. op., not designated for publication). Those courts held that objected to Section 8.04

charges would be harmless because it was superfluous. We do note, however, that in both those cases there was evidence of voluntary intoxication at or close to the time of the crime so that the charge was proper under *Taylor*. The State also argues that the charge is a superfluous abstraction and the Court of Criminal Appeals has indeed held that reversible error only occurs in giving abstract instructions when the instruction is incorrect or misleading statement of the law which the jury must understand to follow the application paragraph. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App. 1996).

As we noted above, the Texas Court of Criminal Appeals has held that a Section 8.04 instruction on voluntary intoxication is appropriate any time the evidence raises an issue whether the accused was voluntarily intoxicated at the time of the offense to a degree that it may have been a causal factor. *Taylor*, 885 S.W.3d 158. It is then a State's charge. It effectively creates a presumption that an intoxicated person has the requisite mental state, thus relieving the State of its burden of proving all elements of the offense beyond a reasonable doubt. So, rather than a superfluous abstract, where, as here, there is an issue of the sufficiency of the evidence, it is a due process issue because it creates a presumption that the Appellant's mental state was not at issue and effectively relieves the State of its burden of proving all elements of the offense beyond a reasonable doubt. *See Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). Rather, it placed a burden on the Appellant to prove that he was not voluntarily intoxicated. This is harmful error. We sustain Issue One.

In Issue Two, Appellant contends the trial court erred by "refusing to allow consideration of the effect of mental problems in determination [sic] of the requisite state of mind." After reviewing Appellant's brief, his specific complaint is not readily apparent. Appellant merely

points to several objections made during closing arguments, some of which were never ruled on by the trial court, and a motion for a mistrial which was also never ruled on by the trial court. Appellant then concludes that the trial court's inclusion of the definition of involuntary intoxication, "in conjunction with the multiple efforts of the State to classify Appellants' [sic] argument of mental health problems as a defense of diminished capacity, along with the trial court's continued denial of objections regarding the misplaced argument, contributed to jury misunderstanding of its consideration on the element of *mens rea*, which resulted in harm . . . ." We note that Appellant's argument consists only of conclusory statements lacking any citation to legal authority. Thus, he presents nothing for our review. *See* TEX.R.APP.P. 38.1(h); *Jensen v. State*, 66 S.W.3d 528, 534 n.3 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd).

In any event, we construe Appellant's complaint as contending the trial court erred in not allowing him to present evidence of mental illness to negate the *mens rea* element and improperly limiting his closing argument. We disagree. Here, Appellant was not prevented from presenting evidence of his mental condition. First, the trial court explicitly granted trial counsel permission to elicit testimony from Ms. Lily Sakil ("Lily"), Appellant's mother, as to his history of behavioral problems. However, when trial counsel questioned Lily, she stated that she was not familiar with Appellant's history. For example, when asked if she ever realized that Appellant had problems, she stated that at some point, a friend had told her that Appellant had been in a mental hospital. The State objected to the testimony as hearsay. Trial counsel then asked Lily if she had ever visited her son while he was at the hospital and she replied that she had not. Trial counsel then concluded his questioning.

Appellant's wife, Claudia, next testified about his history of mental illness. Trial counsel

first asked Claudia if she thought her husband had mental problems. She stated that "[h]e needs help." When asked what she meant by needing help, Claudia stated that she thought he needed a check-up for diabetes. When trial counsel asked if she knew of any other condition, she stated that she did not. When asked if her husband had a mental condition, she indicated that she did not know. Claudia did testify that she told police when they arrived on the day of the incident that Appellant had mental problems and asked that he be taken to the hospital. When asked, Claudia stated that she first became aware that her husband had a "mental condition" on "September 19." She also testified that she personally had taken Appellant to a mental hospital one month prior to the incident and he was taking medication as a result.

Appellant then called Dr. David F. Briones, a psychiatrist, to testify on his behalf. Dr. Briones testified that Appellant had a history of using medications for psychiatric problems. Dr. Briones stated that Appellant was currently taking "Geodon," an anti-psychotic medication which is also used for impulse control or mood regulation problems, "Celexa," an antidepressant, and also "Tegretol," a mood stabilizer. When trial counsel attempted to question Dr. Briones about Appellant's childhood psychological problems, the State objected and the trial court limited Dr. Briones's testimony to present circumstances.

Dr. Briones then gave his expert opinion as to Appellant's medical condition. Dr. Briones testified that Appellant suffered from a psychotic disorder, had a history of bipolar disorder, polysubstance abuse or abuse of drugs and alcohol, personality problems with antisocial and impulsive features, and a seizure disorder.

Accordingly, we disagree that Appellant was prevented from introducing evidence relevant to whether he possessed the requisite mental state. Even if the trial court had not

allowed Appellant to present evidence of his mental illness, under TEX.R.EVID. 403, the trial court has discretion to preclude evidence of mental illness during the guilt/innocence phase of the trial if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence. *See Jackson v. State*, 160 S.W.3d 568, 574 (Tex.Crim.App. 2005).

We now turn to Appellant's argument that the trial court improperly limited his closing argument. During closing argument, Appellant attempted to argue that the State failed to prove Appellant possessed the requisite mental state as a result of his mental illness. The State repeatedly objected and the trial court sustained some of the State's objections. Despite Appellant's claim to the contrary, while he *may* present evidence of mental illness to the jury, he *may not* then argue to the jury that he did not have the capacity to intentionally, knowingly, or recklessly perform an act. *Jackson*, 160 S.W.3d at 574. Issue Two is overruled.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

June 12, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Carr, J., and Barajas, C.J. (Ret.)
Carr, J., Not Participating
Barajas, C.J. (Ret.)(Sitting by Assignment)

(Publish)