**Opinion filed October 28, 2010**



# In The

# Eleuenth Court of Appeals

_____

## No. 11-08-00268-CR

_____

## CALVIN EUGENE WILLIAMS, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19236**

## M E M O R A N D U M   O P I N I O N

The jury convicted Calvin Eugene Williams of aggravated sexual assault of a child and sexual assault of a child and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice for both offenses. The trial court ordered that appellant's sentences to run consecutively. Appellant challenges his convictions and sentences in five issues. We affirm.

### Background Facts

Appellant was charged in Count I in the indictment with intentionally or knowingly penetrating the sexual organ of his stepdaughter R.B. with his finger at a time when she was younger than fourteen years of age.[1] He was charged in Count II of the indictment with

---

[1]The indictment identifies the sexual assault victim through the use of a pseudonym as authorized by TEX. CODE CRIM. PROC. ANN. art. 57.02 (Vernon Supp. 2010). In light of the victim's status as a minor, we will identify her by the initials of the fictitious name used in the indictment to identify her.

intentionally or knowingly penetrating the sexual organ of R.B. with his sexual organ at a time when she was younger than seventeen years of age.

R.B. was fifteen years old at the time of trial. R.B. testified that she, her mother, and her brother moved from the Dallas-Fort Worth area to the Bangs area in August 2006. Appellant joined the family in late September 2006. The family initially lived with relatives until they acquired a trailer house on West Street in late October 2006.

R.B. testified that appellant began "messing with" her approximately three weeks after they moved into the trailer house on West Street. She described his conduct in this regard as follows:

> At nighttime, [appellant] used to come in my room and he would lay down beside me while I'm trying to sleep and he will start off as rubbing my boobs. And I will kind of nudge or kick him off of me, or whatever. And then, like, he will stop for awhile and then come back and do the same thing. And I will nudge him off again and he will stop for a little bit and then he will start messing with my boobs again. And I just give in and he will start going down to my vagina and start using his fingers and fingering me.

R.B. testified that appellant engaged in this conduct five to ten times. R.B. further testified that appellant subsequently began having sexual intercourse with her after they moved to a house at Lake Brownwood. She estimated that appellant had intercourse with her four or five times.

In September 2007, R.B. learned that she was pregnant. When confronted about the pregnancy by her mother, R.B. disclosed that appellant had been having intercourse with her. A subsequent medical examination revealed that the fetus was not viable. After a physician performed a procedure to remove the fetus, the fetus was transported to the University of North Texas Center for Human Identification in Fort Worth for DNA testing. Farah Plopper, a forensic analyst specializing in DNA identification at the Center, testified that her comparison of the DNA removed from the fetus to DNA samples provided by R.B. and appellant revealed that appellant could not be excluded as the biological father of the fetus. She further testified that 99.9995% of the general male population would be excluded as the biological father of the fetus.

*Sufficiency of the Evidence*

In his fourth issue, appellant challenges the factually sufficiency of the evidence supporting his conviction for aggravated sexual assault of a child as alleged in the first count of the indictment. We note at the outset of our analysis that the Texas Court of Criminal Appeals recently held in *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, *1 (Tex. Crim. App.

2

Oct. 6, 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[2] legal-sufficiency standard and the *Clewis*[3] factual-sufficiency standard" and that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Id.* at *8, *14 (footnotes added). Accordingly, a challenge to the factually sufficiency of the evidence is no longer viable. In the interest of justice, we will review appellant's evidentiary challenge under the legal sufficiency standard.

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks*, 2010 WL 3894613, at *5. In conducting this review, we are required to defer to the jury's role as the sole judge of witness credibility and the weight their testimony is to be afforded. *Brooks*, 2020 WL 3894613, at *5.

Appellant directs his evidentiary challenge to the evidence establishing that R.B. was younger than fourteen at the time of the alleged digital penetration. R.B. testified that her date of birth was January 28, 1993. Accordingly, January 28, 2007, was the determinative date for resolving appellant's evidentiary challenge because R.B. turned fourteen on that date.

As noted previously, R.B. testified that appellant began digitally penetrating her vagina about three weeks after she and her family moved into the trailer house located on West Street in Bangs. R.B. testified on direct examination that she and her family moved into the trailer house on West Street in October 2006. R.B.'s mother testified that R.B. and her family moved into the trailer house on West Street in late October 2006. She recalled the date based upon her son's birthday being on October 25th. She testified that the family considered moving into the trailer house on West Street to be a birthday present for her son. She also recalled the date based upon the date that she received her paycheck.

At one point during the prosecutor's direct examination, he asked R.B. how old she was when the digital penetration occurred. She initially responded that she was fourteen at the time. However, she corrected her answer to thirteen when reminded of the year that the act occurred.

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

On cross-examination, R.B. testified that she may have lived with her aunt for up to four months prior to moving into the trailer house on West Street rather than the two months that she previously testified, thereby suggesting that the family moved into the trailer house after October 2006. On another occasion during cross-examination, R.B. testified that they lived in the trailer house for a couple of months prior to moving to the house at Lake Brownwood. Relying upon R.B.'s mother's testimony that the family moved into the house at Lake Brownwood in July 2007, appellant asserts that R.B.'s testimony that the family lived in the trailer house for a couple of months prior to moving into the house at Lake Brownwood is evidence that the family moved into the trailer house after January 28, 2007. On redirect examination, however, R.B. testified that they moved into the trailer house prior to Thanksgiving in 2006.

Appellant contends that a rational jury could not have found that the digital penetration occurred prior to January 28, 2007, based on the evidence offered at trial. We disagree. R.B. testified that the conduct began three weeks after the family moved into the trailer house on West Street. Accordingly, the critical event in the timeline is the date that the family moved into the trailer house. Both R.B. and her mother testified that the family moved into the trailer house in October 2006. In this regard, R.B.'s mother based her testimony about the move-in date on two events of significance, including her son's birthday occurring in October. Accordingly, there is evidence supporting the jury's verdict. To the extent that R.B. may have given contradictory testimony, it was within the jury's province to resolve any inconsistencies in the evidence. We are mindful in this regard of the difficulties often experienced by children with remembering dates. We conclude that a rational jury could have determined beyond a reasonable doubt that the digital penetration occurred prior to R.B.'s fourteenth birthday. Appellant's fourth issue is overruled.

*Constitutionality of Section 8.04(a)*

Appellant asserts in his first issue that a jury instruction setting out the contents of TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003) violates the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 19 of the Texas Constitution. Section 8.04(a) provides that "[v]oluntary intoxication does not constitute a defense to the commission of crime." At the close of the guilt/innocence phase of trial, the State requested an instruction in the court's charge setting out this provision. The State based its request on comments made by defense counsel during opening statements to the effect that "[appellant] sometimes drinks, sometimes to the point he passes out."

Appellant asserts on appeal that this provision violates the due process provisions of the U.S. and Texas Constitutions because it creates a "mandatory presumption" relating to the State's burden of proof on an element of the offense. He contends that the statute alleviates the State's burden to prove the "intentionally or knowingly" element of the charged offenses. Appellant argues that an instruction based on the statute "requires the jury upon proof of a predicate fact (intoxication), to find an element (intentionally or knowingly) was proved. . . . If the jury found intoxication, the jury is required to find the defendant intended the act. This effectively eliminates the State from having any burden in proving the act was intentional or knowing."

The Texas Court of Criminal Appeals recently addressed "the mandatory presumption" contention asserted by appellant in *Sakil v. State*, 287 S.W.3d 23, 28 (Tex. Crim. App. 2009). The court of appeals in *Sakil* had ruled that Section 8.04(a) "effectively creates a presumption that an intoxicated person has the requisite mental state, thus relieving the State of its burden of proving all elements of the offense beyond a reasonable doubt." *Sakil v. State*, 281 S.W.3d 87, 91 (Tex. App.—El Paso 2008), *rev'd*, 287 S.W.3d at 28. The Court of Criminal Appeals stated as follows in overruling this holding:

> Finally, we note that we disagree with the court of appeals's assessment of voluntary-intoxication instructions in general. The court stated that a Section 8.04(a) instruction "effectively creates a presumption that an intoxicated person has the requisite mental state," and thus relieves "the State of its burden of proving all elements of the offense beyond a reasonable doubt." The court believed that the instruction "placed a burden on . . . Appellant to prove that he was not voluntarily intoxicated." We do not understand this reading of a voluntary-intoxication instruction. If anything, a voluntary-intoxication instruction acts to reaffirm the mental-state requirements, not delete them. "[E]vidence of [an] appellant's intoxication, if any, does not negate the elements of intent or knowledge"; and, therefore, when the evidence suggests that a defendant acted under the influence of a substance, the instruction operates to inform the jury that the elements of the offense, including the requisite mental state, are *not* affected by any evidence of intoxication.

*Sakil*, 287 S.W.3d at 28 (citations omitted). We defer to the Court of Criminal Appeals's holding rejecting appellant's mandatory presumption argument. In doing so, we note our agreement with the court's analysis. Appellant's first issue is overruled.

### *Notice of Enhancement Allegations*

In his second issue, appellant contends that the State did not provide him with notice that it sought to enhance Count I of the indictment under the provisions of TEX. PENAL CODE ANN.

5

§ 12.42 (Vernon Supp. 2010) as a repeat and habitual felony offender.  He bases this contention on the text of the indictment.  The indictment provides in relevant part as follows:

THE STATE OF TEXAS VS.          CALVIN EUGENE WILLIAMS
                                DOB:  10/19/1969

Charge:          CT. I AGGRAVATED SEXUAL ASSAULT OF A CHILD
                 Penal Code §22.021 - 1st Degree Felony

                 CT. II SEXUAL ASSAULT OF A CHILD
                 Penal Code §22.011 - 2nd Degree Felony

                 REPEAT OFFENDER/HABITUAL OFFENDER - Penal Code § 12.42

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of Brown, State of Texas, duly selected, empaneled, sworn, charged, and organized as such at the November Term, 2007, of the 35th Judicial District Court for such County, upon their oaths present in and to said Court at said term that

COUNT I

Calvin Eugene Williams, hereinafter styled Defendant, on or about the 1st day of August, 2006, and before the presentment of this indictment, in the County and State aforesaid, did and there intentionally or knowingly cause the penetration of the sexual organ of Rachel Benning (pseudonym), a child who was then and there younger than 14 years of age and not the spouse of the defendant, by defendant's finger.

COUNT II

And further that on or about the 1st day of June, 2007, in the County and State aforesaid, the defendant, did then and there intentionally or knowingly cause the penetration of the sexual organ of Rachel Benning (pseudonym), a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's sexual organ.

ENHANCEMENT PARAGRAPH ONE:

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense (hereafter styled the primary offense), on the 4th day of March, 1988, in cause number F88-93152-U in the 291st Judicial District Court of Dallas County, Texas, the defendant was convicted of the felony offense of Burglary of a Habitation.

6

ENHANCEMENT PARAGRAPH TWO:

And it is further presented in and to said Court that, prior to the commission of the primary offense, and after the conviction in cause number F88-93152-U was final, the defendant committed the felony offense of Unauthorized Use of a Motor Vehicle, and was convicted on the 19th day of December, 1991, in cause number 0914877 in the 147th Judicial District Court of Travis County, Texas;

Against the Peace and Dignity of the State.

Appellant directs our attention to the two enhancement paragraphs. He contends that the singular form of the terms "aforesaid offense" and "primary offense" in the two enhancement paragraphs indicates that the State only intended to enhance the applicable punishment range for one count in the indictment. He further asserts that the enhancement allegations apply to Count II rather than Count I because Count II is the "aforesaid offense" that immediately precedes the enhancement paragraphs in the indictment. We disagree.

A defendant is entitled to notice of a prior conviction that the State intends to use for enhancement. *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). Although proper notice of intent must be timely, it need not be pleaded in the indictment to be sufficient, so long as it is pleaded "in some form" prior to trial. *Id*. at 34.[4] It is unnecessary to allege prior convictions for enhancement of punishment with the same particularity that is required in charging the primary offense. *See Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986).

The terms "aforesaid offense" and "primary offense" contained in the two enhancement paragraphs address the sequencing requirement of Section 12.42 that a defendant "has previously been finally convicted" of a prior offense before the commission of the alleged new offense. Section 12.42(d). Thus, these terms address the issue of *when the prior convictions became final*. Appellant had notice that both prior convictions became final before the new offenses alleged in Counts I and II.

The internal references in the enhancement paragraphs to a single primary offense were no doubt inartful. However, it is readily apparent that the error, if any, was clerical in nature. This is evidenced by the effect of the enhancement paragraphs on each of the two counts. Count I alleged a first degree felony that would ordinarily be punishable by a term of confinement for life or for any term of not more than 99 years or less than 5 years. TEX. PENAL

---

[4]Other than citing general announcements at pretrial hearings that repeat offender and habitual offender allegations were included in the indictment, the State solely relies on the text of the indictment as evidence of its compliance with the notice requirement.

CODE ANN. §§ 12.32(a), 22.021(e) (Vernon Supp. 2010). Count II alleged a second degree felony that would ordinarily be punishable by a term of confinement of not more than 20 years or less than 2 years. TEX. PENAL CODE ANN. §§ 12.33(a), 22.011(f) (Vernon Supp. 2010). Under Section 12.42(d), the punishment for Count I would be enhanced to a term of confinement for life or for any term of not more than 99 years or less than 25 years upon a showing that appellant had been finally convicted of two prior felony offenses. The same enhanced punishment range of a term of confinement for life or for any term of not more than 99 years or less than 25 years would also apply under Section 12.42(d) for Count II even though Count II alleged a second degree felony. Common sense dictates that the State would seek to punish the first degree felony conduct alleged in Count I on the same basis as the second degree felony conduct alleged in Count II. The Court of Criminal Appeals concluded in *Cooper v. State*, 500 S.W.2d 837, 839 (Tex. Crim. App. 1973), that an "obvious clerical error" involving an enhancement paragraph referring to the wrong paragraph when it alleged the sequence of prior felony convictions did not render the enhancement allegation invalid. This reasoning is applicable to the enhancement allegations in this appeal. We conclude that the enhancement paragraphs' language referring only to a single primary offense was an obvious clerical error that could not have misled appellant into believing the State did not seek sentence enhancement in the event of his conviction for aggravated sexual assault under Count I.

Moreover, the application of the enhancement allegations to Count I only served to increase the minimum term of confinement from five years to twenty-five years. As noted previously, appellant received a life sentence on Count I. Despite appellant's allegations that he might have pursued a different trial strategy had he known that the State was seeking a minimum sentence of twenty-five years on Count I or that the jury might have reached a different result had the minimum sentence been five years, we do not find that appellant suffered harm from the trial court's alleged error in light of the fact that he received a maximum sentence that was not increased by the enhancement allegations. Appellant's second issue is overruled.

*Instruction on Voluntary Intoxication to Mitigate Punishment*

Appellant asserts in his third issue that the trial court erred in refusing his requested instruction under TEX. PENAL CODE ANN. § 8.04(b), (c) (Vernon 2003) that temporary insanity caused by intoxication may be considered in mitigation of punishment. In order to be entitled to a jury instruction on voluntary intoxication for purposes of mitigation of punishment, the evidence must show that the intoxication rendered the defendant temporarily insane in that (1) he

8

did not know his conduct was wrong or (2) he was incapable of conforming his conduct to the law. *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987); *Shelton v. State*, 41 S.W.3d 208, 213 (Tex. App.—Austin 2001, pet. ref'd). Evidence that the defendant may have been intoxicated at the time of the offense does not automatically entitle him to a mitigation instruction at punishment. *Miniel v. State*, 831 S.W.2d 310, 320 (Tex. Crim. App. 1992); *Shelton*, 41 S.W.3d at 213.

Appellant attempts to satisfy the required evidentiary showing of temporary insanity caused by voluntary intoxication by pointing out that he cooperated with law enforcement officials during their investigation. He contends that he would not have cooperated had he known the extent of his conduct. He additionally relies on R.B.'s testimony that he did not say anything when he came into her room and that he did not respond to her effort to nudge him away as evidence that he did not know what he was doing.

The trial court did not err in determining that there was no evidence of temporary insanity caused by voluntary intoxication. Appellant presented no evidence that, by reason of intoxication, he did not know that his conduct was wrong or that he was incapable of conforming his conduct to the law. To the contrary, he asserted in his testimony during the punishment phase that he did not engage in the alleged conduct. Appellant's third issue is overruled.

*Evidence of Prior Sexual Assault Examination of Victim*

In his fifth issue, appellant asserts that the trial court erred in denying his request to present testimony during the guilt/innocence phase from a physician that performed a pelvic examination of R.B. during the previous year based upon an allegation that appellant had sexually assaulted her at that time. Appellant asserts that a sheriff's deputy "opened the door" to evidence concerning the previous allegation by his testimony that appellant told him during an initial encounter that "he had been accused of this a year before by, I think, a grandmother. Appellant sought to elicit testimony from the physician that his examination of R.B. did not reveal evidence of current sexual activity. The physician noted in his examination that R.B. "admitted to having had intercourse" on one occasion approximately a year earlier with her twelve-year-old boyfriend. The trial court made the following ruling in denying appellant's request:

> I find that under the totality of the circumstances that what has been presented outside the presence and hearing of the jury, that the probative value is outweighed by the prejudicial nature, that this would delve into the previous sexual conduct of the victim in the case in violation of the rape shield law. And it

9

involves more speculation than not, given the type of evidence that has been presented.

So, the probative value, I find, is weaker and the prejudicial nature greater. I'm not going to allow this testimony. So, the State's objections are sustained.

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *See Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Appellate courts will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement because trial courts are in the best position to decide questions of admissibility. *Id*. An appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with the decision. *Id*. A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

Appellant argues that the trial court should have admitted the physician's testimony under the rule of optional completeness. TEX. R. EVID. 107 permits the introduction of previously inadmissible evidence when that evidence is necessary to fully explain a matter that has been raised by the adverse party. This rule is limited to instances where a party introduces partial evidence of an act, declaration, conversation, writing, or recorded statement. The rule was adopted to prevent evidence from being taken out of context and misleading the jury. *Mendiola v. State*, 61 S.W.3d 541, 545 (Tex. App.—San Antonio 2001, no pet.). He additionally asserts that the trial court misapplied TEX. R. EVID. 403 by determining that the probative value of the physician's testimony was outweighed by its prejudicial nature.

Appellant does not address the trial court's reference to the rape shield law to exclude the physician's testimony. TEX. R. EVID. 412 excludes all evidence in a criminal case pertaining to the victim's sexual history save for five exceptions: (1) the evidence necessary to rebut or explain scientific or medical evidence by the State; (2) the evidence of past sexual behavior with the accused offered to show consent; (3) the evidence that relates to motive or bias of the victim; (4) the evidence admissible under TEX. R. EVID. 609; or (5) the evidence that is constitutionally required to be admitted. Rule 412 applied to the physician's testimony because his examination of R.B. for evidence of sexual activity delved into her sexual history.

Rule 107 is a rule of admissibility while Rule 412 is a rule of exclusion. Accordingly, the trial court was required to strike a balance between two conflicting rules of evidence in deciding whether to allow the physician's testimony. We conclude that the trial court did not abuse its

discretion by determining that the evidence should be excluded under Rule 412. The protections afforded by Rule 412 are significant. Rule 412 contains five exceptions; however, the rule of optional completeness is not listed as one of the exceptions. Appellant's fifth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


October 28, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.