Opinion filed October 28,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00268-CR

                                                    __________

 

                          CALVIN
EUGENE WILLIAMS, Appellant 

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 35th District Court

                                                           Brown
County, Texas

                                                   Trial
Court Cause No. CR19236

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The jury convicted Calvin Eugene Williams of aggravated sexual assault of a child and
sexual assault of a child and assessed his punishment at confinement for life in
the Institutional Division of the Texas Department of Criminal Justice for both
offenses.  The trial court ordered that appellant’s sentences to run
consecutively.  Appellant challenges his convictions and sentences in five
issues.  We affirm.

Background
Facts

            Appellant
was charged in Count I in the indictment with intentionally or knowingly penetrating
the sexual organ of his stepdaughter R.B. with
his finger at a time when she was younger than fourteen years of age.[1] 
He was charged in Count II of the indictment with intentionally or knowingly
penetrating the sexual organ of R.B. with his sexual organ at a time when she
was younger than seventeen years of age.

R.B.
was fifteen years old at the time of trial.  R.B. testified that she, her
mother, and her brother moved from the Dallas-Fort Worth area to the Bangs area
in August 2006.  Appellant joined the family in late September 2006.  The
family initially lived with relatives until they acquired a trailer house on
West Street in late October 2006.

R.B.
testified that appellant began “messing with”  her approximately three weeks
after they moved into the trailer house on West Street.  She described his
conduct in this regard as follows:

        At
nighttime, [appellant] used to come in my room and he would lay down beside me
while I’m trying to sleep and he will start off as rubbing my boobs.  And I
will kind of nudge or kick him off of me, or whatever.  And then, like, he will
stop for awhile and then come back and do the same thing.  And I will nudge him
off again and he will stop for a little bit and then he will start messing with
my boobs again.  And I just give in and he will start going down to my vagina
and start using his fingers and fingering me.

 

R.B. testified
that appellant engaged in this conduct five to ten times.  R.B. further
testified that appellant subsequently began having sexual intercourse with her
after they moved to a house at Lake Brownwood.  She estimated that appellant
had intercourse with her four or five times.  

            In
September 2007, R.B. learned that she was pregnant.  When confronted about the
pregnancy by her mother, R.B. disclosed that appellant had been having
intercourse with her.  A subsequent medical examination revealed that the fetus
was not viable.  After a physician performed a procedure to remove the fetus,
the fetus was transported to the University of North Texas Center for Human
Identification in Fort Worth for DNA testing.  Farah Plopper, a forensic
analyst specializing in DNA identification at the Center, testified that her
comparison of the DNA removed from the fetus to DNA samples provided by R.B.
and appellant revealed that appellant could not be excluded as the biological
father of the fetus.  She further testified that 99.9995% of the general male population
would be excluded as the biological father of the fetus. 

Sufficiency
of the Evidence

            In
his fourth issue, appellant challenges the factually sufficiency of the
evidence supporting his conviction for aggravated sexual assault of a child as
alleged in the first count of the indictment. We note at the outset of our
analysis that the Texas Court of Criminal Appeals recently held in Brooks v.
State, No. PD-0210-09, 2010 WL 3894613, *1 (Tex. Crim. App. Oct. 6, 2010),
that there is “no meaningful distinction between the Jackson v. Virginia[2]
legal-sufficiency standard and the Clewis[3]
factual-sufficiency standard” and that the Jackson v. Virginia standard
is the “only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt. All
other cases to the contrary, including Clewis, are overruled.”  Id. at *8, *14 (footnotes
added).  Accordingly, a challenge to the factually sufficiency of the evidence
is no longer viable.  In the interest of justice, we will review appellant’s
evidentiary challenge under the legal sufficiency standard.

            In
order to determine if the evidence
is legally sufficient, the
appellate court reviews all of the evidence in the light most favorable to the
verdict and determines whether the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Brooks, 2010 WL 3894613, at *5.  In conducting
this review, we are required to defer to the jury’s role as the sole judge of
witness credibility and the weight their testimony is to be afforded.   Brooks,
2020 WL 3894613, at *5.   

            Appellant
directs his evidentiary challenge to the evidence establishing that R.B. was
younger than fourteen at the time of the alleged digital penetration.  R.B.
testified that her date of birth was January 28, 1993.  Accordingly, January
28, 2007, was the determinative date for resolving appellant’s evidentiary
challenge because R.B. turned fourteen on that date.  

            As
noted previously, R.B. testified that appellant began digitally penetrating her
vagina about three weeks after she and her family moved into the trailer house
located on West Street in Bangs.  R.B. testified on direct examination that she
and her family moved into the trailer house on West Street in October 2006.  R.B.’s
mother testified that R.B. and her family moved into the trailer house on West
Street in late October 2006.  She recalled the date based upon her son’s
birthday being on October 25th.  She testified that the family considered
moving into the trailer house on West Street to be a birthday present for her
son.  She also recalled the date based upon the date that she received her
paycheck.

            At
one point during the prosecutor’s direct examination, he asked R.B. how old she
was when the digital penetration occurred.  She initially responded that she
was fourteen at the time.  However, she corrected her answer to thirteen when
reminded of the year that the act occurred.   On cross-examination, R.B.
testified that she may have lived with her aunt for up to four months prior to
moving into the trailer house on West Street rather than the two months that
she previously testified, thereby suggesting that the family moved into the
trailer house after October 2006.  On another occasion during
cross-examination, R.B. testified that they lived in the trailer house for a
couple of months prior to moving to the house at Lake Brownwood.  Relying upon
R.B.’s mother’s testimony that the family moved into the house at Lake
Brownwood in July  2007, appellant asserts that R.B.’s testimony that the
family lived in the trailer house for a couple of months prior to moving into
the house at Lake Brownwood is evidence that the family moved into the trailer
house after January 28, 2007.  On redirect examination, however, R.B. testified
that they moved into the trailer house prior to Thanksgiving in 2006.

            Appellant
contends that a rational jury could not have found that the digital penetration
occurred prior to January 28, 2007, based on the evidence offered at trial.  We
disagree.  R.B. testified that the conduct began three weeks after the family
moved into the trailer house on West Street.  Accordingly, the critical event
in the timeline is the date that the family moved into the trailer house.  Both
R.B. and her mother testified that the family moved into the trailer house in
October 2006.  In this regard, R.B.’s mother based her testimony about the
move-in date on two events of significance, including her son’s birthday
occurring in October.  Accordingly, there is evidence supporting the jury’s
verdict.  To the extent that R.B. may have given contradictory testimony, it
was within the jury’s province to resolve any inconsistencies in the evidence. 
We are mindful in this regard of the difficulties often experienced by children
with remembering dates.  We conclude that a rational jury could have determined
beyond a reasonable doubt that the digital penetration occurred prior to R.B.’s
fourteenth birthday.  Appellant’s fourth issue is overruled.

Constitutionality
of Section 8.04(a)

            Appellant
asserts in his first issue that a jury instruction setting out the contents of Tex. Penal Code Ann. § 8.04(a) (Vernon 2003)
violates the Fifth and Fourteenth Amendments of the United States Constitution
and Article I, section 19 of the Texas Constitution.  Section 8.04(a) provides that
“[v]oluntary intoxication does not constitute a defense to the commission of
crime.”  At the close of the guilt/innocence phase of trial, the State
requested an instruction in the court’s charge setting out this provision.  The
State based its request on comments made by defense counsel during opening
statements to the effect that “[appellant] sometimes drinks, sometimes to the
point he passes out.”

            Appellant
asserts on appeal that this provision violates the due process provisions of
the U.S. and Texas Constitutions because it creates a “mandatory presumption”
relating to the State’s burden of proof on an element of the offense.  He
contends that the statute alleviates the State’s burden to prove the
“intentionally or knowingly” element of the charged offenses.  Appellant argues
that an instruction based on the statute “requires the jury upon proof of a
predicate fact (intoxication), to find an element (intentionally or knowingly)
was proved. . . . If the jury found intoxication, the jury is required to find
the defendant intended the act.  This effectively eliminates the State from
having any burden in proving the act was intentional or knowing.” 

            The
Texas Court of Criminal Appeals recently addressed “the mandatory presumption”
contention asserted by appellant in Sakil v. State, 287 S.W.3d 23, 28
(Tex. Crim. App. 2009).  The court of appeals in Sakil had ruled that
Section 8.04(a) “effectively creates a presumption that
an intoxicated person has the requisite mental state, thus relieving the State
of its burden of proving all elements of the offense beyond a reasonable doubt.” 
Sakil v. State, 281 S.W.3d 87, 91 (Tex. App.—El Paso 2008), rev’d,
287 S.W.3d at 28.  The Court of Criminal Appeals stated as follows in
overruling this holding:

Finally, we note that we disagree with the court of appeals’s assessment of
voluntary-intoxication instructions in general. The court stated that a Section
8.04(a) instruction “effectively creates a presumption that an intoxicated
person has the requisite mental state,” and thus relieves “the State of its
burden of proving all elements of the offense beyond a reasonable doubt.” The
court believed that the instruction “placed a burden on . . . Appellant to
prove that he was not voluntarily intoxicated.” We do not understand this
reading of a voluntary-intoxication instruction. If anything, a
voluntary-intoxication instruction acts to reaffirm the mental-state
requirements, not delete them. “[E]vidence of [an] appellant’s intoxication, if
any, does not negate the elements of intent or knowledge”; and, therefore, when
the evidence suggests that a defendant acted under the influence of a
substance, the instruction operates to inform the jury that the elements of the
offense, including the requisite mental state, are not affected by any
evidence of intoxication.

 

Sakil, 287 S.W.3d at 28 (citations omitted).  We defer to the Court of Criminal Appeals’s
holding rejecting appellant’s mandatory presumption argument.  In doing so, we
note our agreement with the court’s analysis.  Appellant’s first issue is
overruled.

Notice
of Enhancement Allegations

            In
his second issue, appellant contends that the State did not provide him with
notice that it sought to enhance Count I of the indictment under the provisions
of Tex. Penal Code Ann. § 12.42
(Vernon Supp. 2010) as a repeat and habitual felony offender.  He bases this
contention on the text of the indictment.  The indictment provides in relevant
part as follows: 

THE STATE OF TEXAS VS.            CALVIN
EUGENE WILLIAMS

                                                                        DOB: 
10/19/1969

 

Charge:            CT. I AGGRAVATED
SEXUAL ASSAULT OF A CHILD

                                    Penal Code §22.021 - 1st
Degree Felony

 

                                    CT. II SEXUAL ASSAULT OF
A CHILD

                                    Penal Code §22.011 - 2nd
Degree Felony

 

                                    REPEAT OFFENDER/HABITUAL
OFFENDER - Penal Code § 12.42

 

IN THE NAME AND BY AUTHORITY OF THE
STATE OF TEXAS:

 

THE GRAND JURY, for
the County of Brown, State of Texas, duly selected, empaneled, sworn, charged,
and organized as such at the November Term, 2007, of the 35th Judicial District
Court for such County, upon their oaths present in and to said Court at said
term that

 

COUNT I

 

Calvin Eugene
Williams, hereinafter styled Defendant, on or about the 1st day of August,
2006, and before the presentment of this indictment, in the County and State
aforesaid, did and there intentionally or knowingly cause the penetration of
the sexual organ of Rachel Benning (pseudonym), a child who was then and there
younger than 14 years of age and not the spouse of the defendant, by defendant’s
finger.

 

COUNT II

 

And further that on
or about the 1st day of June, 2007, in the County and State aforesaid, the
defendant, did then and there intentionally or knowingly cause the penetration
of the sexual organ of Rachel Benning (pseudonym), a child who was then and
there younger than 17 years of age and not the spouse of the defendant, by
defendant’s sexual organ.

 

ENHANCEMENT
PARAGRAPH ONE:

 

And it is further
presented in and to said Court that, prior to the commission of the aforesaid
offense (hereafter styled the primary offense), on the 4th day of March, 1988,
in cause number F88-93152-U in the 291st Judicial District Court of Dallas
County, Texas, the defendant was convicted of the felony offense of Burglary of
a Habitation.

 




 

ENHANCEMENT
PARAGRAPH TWO:

 

And it is further
presented in and to said Court that, prior to the commission of the primary
offense, and after the conviction in cause number F88-93152-U was final, the
defendant committed the felony offense of Unauthorized Use of a Motor Vehicle,
and was convicted on the 19th day of December, 1991, in cause number 0914877 in
the 147th Judicial District Court of Travis County, Texas;

 

                    Against the
Peace and Dignity of the State.

 

Appellant
directs our attention to the two enhancement paragraphs.  He contends that the singular
form of the terms “aforesaid offense” and “primary offense” in the two
enhancement paragraphs indicates that the State only intended to enhance the
applicable punishment range for one count in the indictment.  He further
asserts that the enhancement allegations apply to Count II rather than
Count I because Count II is the “aforesaid offense” that immediately precedes
the enhancement paragraphs in the indictment.  We disagree.  

            A
defendant is entitled to notice of a prior conviction that the State intends to
use for enhancement.  Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App.
1997).  Although proper notice of intent must be timely, it need not be pleaded
in the indictment to be sufficient, so long as it is pleaded “in some form”
prior to trial.  Id. at 34.[4] 
It is unnecessary to allege prior convictions for enhancement of punishment
with the same particularity that is required in charging the primary offense.  See
Freda v. State, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986).  

            The terms
“aforesaid offense” and “primary offense” contained in the two enhancement
paragraphs address the sequencing requirement of Section 12.42 that a defendant
“has previously been finally convicted” of a prior offense before the
commission of the alleged new offense.   Section 12.42(d).  Thus, these terms
address the issue of when the prior convictions became final.  Appellant
had notice that both prior convictions became final before the new offenses
alleged in Counts I and II.  

            The
internal references in the enhancement paragraphs to a single primary offense were
no doubt inartful.  However, it is readily apparent that the error, if any, was
clerical in nature.  This is evidenced by the effect of the enhancement
paragraphs on each of the two counts.  Count I alleged a first degree
felony that would ordinarily be punishable by a term of confinement for life or
for any term of not more than 99 years or less than 5 years.  Tex. Penal Code Ann. §§ 12.32(a),
22.021(e) (Vernon Supp. 2010).  Count II alleged a second degree felony that
would ordinarily be punishable by a term of confinement of not more than 20
years or less than 2 years.  Tex. Penal
Code Ann. §§ 12.33(a), 22.011(f) (Vernon Supp. 2010).  Under Section 12.42(d),
the punishment for Count I would be enhanced to a term of confinement for life
or for any term of not more than 99 years or less than 25 years upon a showing
that appellant had been finally convicted of two prior felony offenses.   The
same enhanced punishment range of a term of confinement for life or for any
term of not more than 99 years or less than 25 years would also apply under
Section 12.42(d) for Count II even though Count II alleged a second degree
felony.  Common sense dictates that the State would seek to punish the first degree
felony conduct alleged in Count I on the same basis as the second degree felony
conduct alleged in Count II.  The Court of Criminal Appeals concluded in Cooper
v. State, 500 S.W.2d 837, 839 (Tex. Crim. App. 1973), that an “obvious
clerical error” involving an enhancement paragraph referring to the wrong paragraph
when it alleged the sequence of prior felony convictions did not render the
enhancement allegation invalid.  This reasoning is applicable to the enhancement
allegations in this appeal.  We conclude that the enhancement
paragraphs’ language referring only to a single primary
offense was an obvious clerical error that could not have misled appellant into
believing the State did not seek sentence enhancement in
the event of his conviction for aggravated sexual assault under Count I.

            Moreover,
the application of the enhancement allegations to Count I only served to
increase the minimum term of confinement from five years to twenty-five years. 
As noted previously, appellant received a life sentence on Count I.  Despite
appellant’s allegations that he might have pursued a different trial strategy
had he known that the State was seeking a minimum sentence of twenty-five years
on Count I or that the jury might have reached a different result had the
minimum sentence been five years, we do not find that appellant suffered harm
from the trial court’s alleged error in light of the fact that he received a
maximum sentence that was not increased by the enhancement allegations. 
Appellant’s second issue is overruled.

Instruction
on Voluntary Intoxication to Mitigate Punishment

Appellant
asserts in his third issue that the trial court erred in refusing his requested
instruction under Tex. Penal Code Ann.
§ 8.04(b), (c) (Vernon 2003) that temporary insanity caused by intoxication may
be considered in mitigation of punishment.  In order to be entitled to a jury instruction on voluntary
intoxication for purposes of mitigation of punishment, the evidence must show
that the intoxication rendered the defendant temporarily insane in that (1) he
did not know his conduct was wrong or (2) he was incapable of conforming his
conduct to the law. Cordova v. State, 733 S.W.2d 175, 190 (Tex. Crim. App.
1987); Shelton v. State, 41 S.W.3d 208, 213 (Tex. App.—Austin 2001, pet.
ref’d).  Evidence that the defendant may have been intoxicated at the time of
the offense does not automatically entitle him to a mitigation instruction at
punishment. Miniel v. State, 831 S.W.2d 310, 320 (Tex. Crim. App. 1992);
Shelton, 41 S.W.3d at 213.

Appellant
attempts to satisfy the required evidentiary showing of temporary insanity
caused by voluntary intoxication by pointing out that he cooperated with law
enforcement officials during their investigation.  He contends that he would
not have cooperated had he known the extent of his conduct.  He additionally
relies on R.B.’s testimony that he did not say anything when he came into her
room and that he did not respond to her effort to nudge him away as evidence
that he did not know what he was doing.

            The
trial court did not err in determining that there was no evidence of temporary
insanity caused by voluntary intoxication.  Appellant presented no evidence that, by reason of intoxication, he did not know that his conduct was wrong or that
he was incapable of conforming his conduct to the law.  To the contrary, he
asserted in his testimony during the punishment phase that he did not engage in
the alleged conduct.  Appellant’s third issue is overruled.

Evidence
of Prior Sexual Assault Examination of Victim

            In
his fifth issue, appellant asserts that the trial court erred in denying his
request to present testimony during the guilt/innocence phase from a physician
that performed a pelvic examination of R.B. during the previous year based upon
an allegation that appellant had sexually assaulted her at that time. 
Appellant asserts that a sheriff’s deputy “opened the door” to evidence
concerning the previous allegation by his testimony that appellant told him
during an initial encounter that “he had been accused of this a year before by,
I think, a grandmother.  Appellant sought to elicit testimony from the
physician that his examination of R.B. did not reveal evidence of current
sexual activity.  The physician noted in his examination that R.B. “admitted to
having had intercourse” on one occasion approximately a year earlier with her
twelve-year-old boyfriend.  The trial court made the following ruling in
denying appellant’s request:

I find that under
the totality of the circumstances that what has been presented outside the
presence and hearing of the jury, that the probative value is outweighed by the
prejudicial nature, that this would delve into the previous sexual conduct of
the victim in the case in violation of the rape shield law.  And it involves
more speculation than not, given the type of evidence that has been presented. 


 

            So, the
probative value, I find, is weaker and the prejudicial nature greater.  I’m not
going to allow this testimony.  So, the State’s objections are sustained.  

 

We
review a trial court’s decision regarding the admissibility of evidence under
an abuse of discretion standard. See Cameron v. State, 241 S.W.3d 15, 19
(Tex. Crim. App. 2007).  Appellate courts will uphold a trial court’s
admissibility decision when that decision is within the zone of reasonable
disagreement because trial courts are in the best position to decide questions
of admissibility. Id. An appellate court may not reverse a trial court’s
decision regarding the admissibility of evidence solely because the appellate
court disagrees with the decision.  Id.  A trial court abuses its
discretion when its decision lies outside the zone of reasonable disagreement.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

            Appellant
argues that the trial court should have admitted the physician’s testimony
under the rule of optional completeness.  Tex. R. Evid. 107 permits the
introduction of previously inadmissible evidence when
that evidence is necessary to fully explain a matter that
has been raised by the adverse party.  This rule is limited to instances where
a party introduces partial evidence of an act,
declaration, conversation, writing, or recorded statement.  The rule was
adopted to prevent evidence from being taken out of
context and misleading the jury. Mendiola v. State, 61 S.W.3d 541,
545 (Tex. App.—San Antonio 2001, no pet.).  He additionally asserts that the
trial court misapplied Tex. R. Evid.
403 by determining that the probative value of the physician’s testimony was
outweighed by its prejudicial nature.  

Appellant
does not address the trial court’s reference to the rape shield law to exclude
the physician’s testimony.  Tex. R.
Evid. 412 excludes all evidence in a criminal case
pertaining to the victim’s sexual history save for five exceptions: (1) the evidence necessary to rebut or explain scientific or medical
evidence by the State; (2) the evidence
of past sexual behavior with the accused offered to show consent; (3) the evidence that relates to motive or bias of the victim; (4)
the evidence admissible under Tex. R. Evid. 609; or (5) the evidence
that is constitutionally required to be admitted.  Rule
412 applied to the physician’s testimony because his examination of R.B. for
evidence of sexual activity delved into her sexual history.

Rule
107 is a rule of admissibility while Rule 412 is a rule of exclusion. 
Accordingly, the trial court was required to strike a balance between two
conflicting rules of evidence in deciding whether to allow the physician’s
testimony.  We conclude that the trial court did not abuse its discretion by
determining that the evidence should be excluded under Rule 412.  The
protections afforded by Rule 412 are significant.  Rule 412 contains five exceptions;
however, the rule of optional completeness is not listed as one of the
exceptions.  Appellant’s fifth issue is overruled.

This
Court’s Ruling

             The
judgment of the trial court is affirmed.

 

            

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

October  28, 2010

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]The indictment identifies the sexual assault victim
through the use of a pseudonym as authorized by Tex. Code Crim. Proc. Ann. art. 57.02 (Vernon Supp. 2010).  In
light of the victim’s status as a minor, we will identify her by the initials
of the fictitious name used in the indictment to identify her. 





                [2]Jackson v. Virginia, 443 U.S. 307 (1979).

 





                [3]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).





                [4]Other than citing general announcements at pretrial
hearings that repeat offender and habitual offender allegations were included
in the indictment, the State solely relies on the text of the indictment as
evidence of its compliance with the notice requirement.